94 So.2d 592 (1957)
Nellie Dregne FLAGLER, Appellant,
v.
Harold G. FLAGLER, Appellee.
Supreme Court of Florida, En Banc.
April 17, 1957.
*593 Miller, Hewitt & Cone, West Palm Beach, for appellant.
Burns, Middleton, Rogers & Farrell, West Palm Beach, for appellee.
CHARLES A. LUCKIE, Associate Justice.
Harold Flagler secured a divorce from Nellie Flagler in January, 1949, obtaining service on her by publication. At the time of the divorce Nellie Flagler was alleged to be a resident of Wisconsin. Also, at the time, she was pregnant and was delivered of a female child on September 4, 1949. On November 19, 1949, Harold Flagler executed his will in which he made no reference to the minor child or to his former wife, but left the bulk of his estate to his then wife, Juanita Flagler. In January of 1950 Nellie Flagler petitioned the court to have the divorce decree set aside and to compel Harold Flagler to support the child. In the latter proceeding Harold denied the paternity of the child and objected to any allowance for the child's support. The court denied Nellie's petition to set aside the divorce, but held that Harold did not overcome the legal presumption that he was the father of the child. Harold was ordered to pay $300.00 per month for the support of the child. He made all payments until his death on January 6, 1955. Juanita Flagler has been duly appointed as administratrix of Harold's estate in Illinois and is now the ancillary executrix in Florida of Harold's last will and testament and of his estate, which is valued in excess of $400,000.00.
*594 Thereafter, Nellie Flagler, claiming that neither she nor the minor child have any funds whatever, petitioned the lower court to substitute Juanita Flagler, as ancillary executrix, for Harold Flagler as the obligor under the support decree, and for a decree requiring the ancillary executrix to continue to make payments for the support of the child until the child reaches her majority. The lower court ruled against Nellie Flagler and followed an earlier decision of this court in the case of Guinta v. Lo Re, 159 Fla. 488, 31 So.2d 704, holding that the obligation of the father to support the minor child terminated upon the death of the father.
Nellie Flagler has appealed, asserting that helpless minor children should be given the full protection of equity courts and that, to hold otherwise in this instance, would create manifest social injustice and cast the child upon public charity rather than requiring the estate of the father to support the child. Appellant also urges that the case of Guinta v. Lo Re, supra, turned largely on a procedural point and that such case should be either distinguished or overruled.
We readily agree that minors in divorce cases are wards of the court and should receive every protection consistent with the law. But we cannot agree that courts of equity have any right or power under the law of Florida to issue such order it considers to be in the best interest of "social justice" at the particular moment without regard to established law. This court has no authority to change the law simply because the law seems to us to be inadequate in some particular case. The right of a parent to disinherit his children seems to be firmly rooted in our law, subject only to the provisions of the Probate Act or such other laws as the legislature may enact.
This court does not necessarily prefer to protect the father's power of testamentary disposition rather than the welfare of the child, but the court does feel that only the legislature has the authority to enact laws dealing with this problem. It is significant that at the next session of the legislature following our decision in Guinta v. Lo Re, supra, Section 733.20, Florida Statutes, was amended to provide for the support of any dependent minor child from the estate of a parent dying testate, when there is no legally responsible surviving natural or adoptive parent, such amendment being "designed to afford reasonable protection to any dependent minor child who has been excluded from the provisions of the parents' will under circumstances which deprive it of an effective legal substitute for the continuing obligation of the parent, while living, for support and maintenance during the period of its minority." Chapter 25274, Laws of Florida, Acts of 1949, § 733.20(j), Florida Statutes 1955, F.S.A. Apparently it was not the intention of the legislature to place a dependent minor child in whose favor a support decree was in existence at the time of a parent's death in a preferred position over a dependent minor child not having the benefit of a support decree.
Lacking authority of law to hold that the ancillary executrix may be compelled to carry out the terms of the support decree under the facts and circumstances hereinabove outlined, we can do nothing but affirm the lower court.
Affirmed.
HOBSON, and ROBERTS and THORNAL, JJ., concur.
TERRELL, C.J., and THOMAS and O'CONNELL, JJ., dissent.
THOMAS, Justice (dissenting).
In 1949 Harold G. Flagler and Nellie Dregne Flagler were divorced and subsequently, in 1952, a decree was entered by which Harold G. Flagler was required to *595 pay his former wife $300 each month for the support of the infant daughter of the parties. About six years after the divorce the father died leaving a large estate. Meanwhile he had married Juanita Flagler who is now ancillary executrix. Neither the mother nor the child was a beneficiary and it is claimed that both are without funds.
The appellant undertook to have the ancillary executrix substituted for the father as obligor under the support decree and her effort was unavailing. Upon her petition for such relief the chancellor issued an order commanding the ancillary executrix to show cause why the substitution should not be made, but upon reconsidering the matter on the answer containing a motion to quash the rule was discharged.
The motion was based on the ground that the claim on behalf of the child terminated with the father's death; it was granted on the ground that the question was resolved by the decision in Guinta v. Lo Re, 159 Fla. 448, 31 So.2d 704.
The problem is the propriety of the ruling that the ancillary executrix could not be made amenable to the decree against the testator.
Before considering the immediate question, a brief chronology of the relevant events and proceedings ending in the order under review should be given. The appellant and the testator were divorced 20 April 1949. At that time the appellant was pregnant and her child was born 4 September 1949. No provision was made in the divorce decree for the support of the child. On 19 November 1949 the testator executed a will in which the child was not mentioned. In a subsequent proceeding, initiated 31 January 1950, the appellant unsuccessfully undertook to have the decree of divorce set aside and in that suit the issue of the paternity of the child was presented. The court held that the defendant, the testator, had not overcome the presumption that he fathered the child, specifically declared him the father and ordered him thenceforth to pay the support money to which we referred at the outset. The testator obeyed the order until he died 6 January 1955.
It is time now to consider the lone question already stated and the conclusiveness of the opinion in Guinta v. Lo Re, supra.
In that case the court dealt with a claim against an estate for support payments that were in arrears at the time of the obligor-testator's death and for such payments that would accrue until each of the children reached her majority. An attempt was made to secure an adjudication of the amounts due and to become due. The chancellor held that claim to future payments was uncollectible; that matured installments could be recovered but only in an action at law so he transferred the cause to the law side of the court for determination of that part of the demand.
In the appeal only the validity of the claim for future payments was adjudicated. The court, with two members dissenting, tersely ruled: "Upon death the obligation under this decree ended." The remainder of the opinion treated of procedure but in it the court intimated that the proper way to present the matter was to have the executrix substituted as a party in the original proceeding, as was done in the instant case, instead of instituting a new suit, as was done in that one.
The decision, and the underlying principles which are emphasized by the present facts should be examined carefully. A woman has the care of a seven-year-old daughter and both of them are penniless. The father recognized and obeyed the order to pay a certain amount monthly and only death halted the payments. The care of the child was his responsibility and the intervention of death did not terminate the need for sustenance that was likely to continue for another fourteen years. The only alternatives are to put the burden on someone not obligated to bear it, or on the public. The estate, valued at $400,000, *596 would go to those who doubtless are sensible of no responsibility for the care of the child, legal or sentimental.
It is impossible for me to agree, despite my deference to former colleagues who concurred in the opinion in the cited case, that although it is the duty of courts of equity to protect infants and to regard them as wards of the court, we should doggedly adhere to the common law rule that a father's death terminates his liability to support his minor children.
The dissimilarity between the law of England and the law of Florida in respect of the responsibility of the father for the sustenance of his minor child relieves this court of any hesitancy in departing from the holding in Guinta v. Lo Re, supra. In England apparently the father even in his lifetime was not legally bound to support his minor children. The obligation was only moral. Edelman v. Edelman, 65 Wyo. 271, 199 P.2d 840, 203 P.2d 952. Besides the general duty of courts of equity, to which I just referred, power is expressly reposed in the courts to make orders relative to the care and maintenance of children in adjudicating suits for divorce, Sec. 65.14, Florida Statutes 1951, and F.S.A., and by statutory law a man who deserts his children or withholds from them means of support may be punished by fine or imprisonment in the state prison, Sec. 856.04, Florida Statutes 1951, and F.S.A. Moreover, to show the furtherance of this principle, the legislature in 1955 enacted the "uniform reciprocal enforcement of support law" to "improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto," Chapter 88, Florida Statutes 1955, F.S.A. In the act "`[d]uty of support' includes any duty of support imposed or imposable by law, or by any court order," Sec. 88.031(6), Florida Statutes 1955, F.S.A., and the law was designed to reach obligors outside of the state who become obligated in the state and to promote reciprocity in such respect between this state and each of the others.
It seems to me illogical to hold that as the father under English law is not legally bound to support his minor children and his estate is not accountable after his death, still the English law is applicable after the death of the father although in this state he is legally bound to support his minor children before his death.
We should in my opinion, depart from the holding in Guinta v. Lo Re, supra, and align this court with the Supreme Courts of California, Taylor v. George, 34 Cal.2d 552, 212 P.2d 505; Michigan, Creyts v. Creyts, 143 Mich. 375, 106 N.W. 1111; and Wyoming, Edelman v. Edelman, supra, rehearing denied 65 Wyo. 295, 203 P.2d 952. See also 18 A.L.R.2d 1126.
Obviously, the necessity in a case such as this does not cease at the time of death; the period during which a child seven years of age will require food and shelter is not coextensive with the father's earthly existence.
I find it necessary to register an unqualified dissent.
TERRELL, C.J., and O'CONNELL, J., concur.