KLINGENSMITH, J.
’ William Richardson (“appellant”) appeals from the trial court’s final judgment of dissolution of marriage, terminating his marriage to Yvette Richardson, now known as Yvette Knight (“appellee”).
On the day of the final hearing, appellant’s attorney explained to the trial judge that the parties had agreed to a marriage settlement agreement (“MSA”), and then read the relevant terms of the accord into the record in open court,. After this was done, appellee’s, attorney stated that the MSA as read by appellant’s attorney was correct. The court rendered a final judgment incorporating the terms of the parties’ stated settlement,. and attached the transcript of the proceedings from the final hearing to serve as the MSA.
Thereafter, appellant retained new counsel and filed a combined motion for new trial, rehearing, and, alternatively, amendment of the final judgment. The trial judge denied the motion. Because neither appellant nor appellee reduced the MSA to writing, or gave sworn testimony at the final hearing indicating their assent to its terms, we reverse.
“[Wjhether an agreement constitutes a valid contract is a matter of law subject to de novo review.” Bonagura v. Home Depot, 991 So.2d 902, 904 (Fla. 1st DCA 2008) (alteration in original) (quoting Munroe v. U.S. Food Serv., 985 So.2d 654, 655 (Fla. 1st DCA 2008)).
In its final judgment, the trial court included the preamble that it had “reviewed the file in this cause, the [MSA] entered into by the parties ... [and had] taken sworn testimony of the parties.” It is clear from the transcript that the trial judge never asked the parties pn the record if they agreed , to and understood the terms of the MSA, or if they had discussed the terms with their attorneys. Rather, the parties’ attorneys did almost all of the talking at the hearing, with appellant’s attorney taking the lead. Simply put, the record shows that the trial court did not take any sworn testimony from the parties, despite what was stated in the final judgment.
Generally, “[a]n agreement announced in open court is an enforceable settlement agreement.” Barone v. Rogers, 930 So.2d 761, 763 (Fla. 4th DCA 2006). This rule holds true for MSAs in dissolution of marriage actions. See, e.g., Cohen v. Cohen, 629 So.2d 909, 910 (Fla. 4th DCA 1993) (“[W]e expressly approve of oral settlement agreements announced in open court.”). However, an oral MSA that is read into the record requires more than a mere- recitation of the terms by the parties’ attorneys to be valid and enforceable.
In Chovan v. Chovan, 90 So.3d 898, 899-900 (Fla. 4th DCA 2012), the parties reached a settlement agreement after initiating dissolution proceedings, and the trial judge had the former wife’s counsel recite the agreement on the record. The trial court then requested that the parties submit a proposed final judgment, which the former wife’s attorney later did.- Id. at 900. The trial court ultimately “adopted the former wife’s proposed final judgment without change,” and the former husband appealed, arguing that the final judgment was inconsistent with the terms of the agreement discussed at the hearing. Id.
In that case, we found that the agreement stipulated to on the record was a valid and enforceable agreement, and affirmed only the portion of .the final judgment that accurately reflected the terms discussed at the hearing. Id. at 900-02. We did so because both parties had .indicated their understanding of and assent to those terms on the record:
*145 “Florida courts do not take lightly agreements made by husband and wife concerning spousal support_ [And it is the] well-established policy in Florida that settlement agreements are highly favored in the law.” Griffith v. Griffith, 860 So.2d 1069, 1073 (Fla. 1st DCA 2003) (citing Dorson v. Dorson, 393 So.2d 632, 633 (Fla. 4th DCA 1981)).' “ ‘[T]he fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement.’ ” Id. (alteration in original) (quoting Casto v. Casto, 508 So.2d 330, 334 (Fla.1987)).
Here, the parties began the dissolution proceeding only to promptly reach a settlement agreement. The trial court then had the former wife’s counsel recite the agreement on the record. The trial court asked each party whether they had discussed the terms with their lawyer and had all of their questions answered. Both parties responded in the affirmative.. The trial court then requested the parties to collaboratively submit a proposed final judgment. ■
Id. at 900-01 (footnote omitted)!
Likewise, in Roskind v. Roskind, 552 So.2d 1155, 1155-56 (Fla. 3d DCA 1989), the Third District upheld an oral settlement agreement under circumstances somewhat similar to the case presently before the court. There, during trial “the parties and their attorneys announced to the trial judge that they had reached a settlement,” and the husband’s counsel read the agreement into the record. Id. After this recitation, the wife affirmed her understanding and “unequivocally agreed” to the settlement, after being specifically asked by the judge whether she: 1) understood the agreement; 2) had an opportunity to speak with her attorneys; 3) entered into the agreement freely and voluntarily; and 4) had any questions. Id. at 1156.
The wife later objected to the written settlement agreement and refused to sign it. Id. Ultimately, the trial court entered a final judgment incorporating the agreement as announced to the judge, and the Third District affirmed:
A stipulation properly entered into the record, where there is a clear understanding of the finality of that agreement, is an effective and enforceable settlement notwithstanding that ‘it is subject ‘to reduction to a written document. ...
The record is clear that after the terms of the agreement were read into the record, [the wife] affirmed her understanding and unequivocally agreed[.]

Id.

These cases establish that in order for an oral MSA announced in open court to be valid and enforceable, the trial judge must obtain clear and unequivocal assent to the MSA from each party on the record, and must also confirm that each party has discussed the MSA with their attorney and fully understands the terms. We dispelled any doubt concerning the necessity of obtaining explicit consent to an oral MSA on the record when we decided Loss v. Loss, 608 So.2d 39 (Fla. 4th DCA 1992). . There, we made clear on rehearing that:
While it might seem to some that we are splitting hairs, Mrs. Loss’s suggestion that Dr. Loss nodded his head in agreement and failed to protest as the trial judge discussed the proposed terms, is not enough. The trial court must elicit express consent to all terms on the record in dissolution proceedings.
Id. at 46 n. 1. (emphasis added).
Because the transcript of the final hearing was insufficient- to constitute an *146 enforceable MSA, a valid MSA was therefore never entered and filed with the court. In that situation, an equitable distribution scheme decided by the trial court must comply with section 61.075, Florida Statutes, which states in pertinent part:
(3) In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1). The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
(c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court’s rationale for the distribution of marital assets and allocation of liabilities.
§ 61.075(3), Fla. Stat. (2015) (emphasis added).
Section 61.075(1) lists ten separate factors for the trial court to consider when determining the equitable distribution of assets and liabilities in a dissolution of marriage action, and whether the equitable distribution should be equal or unequal. Id. § 61.075(1). Here, the equitable distribution in the final judgment is not supported by factual findings with reference to the factors listed in section 61.075(1), as required by section 61.075(3) when “a stipulation and agreement has not been entered and filed.” Id. § 61.075(3); see also Marshall-Beasley v. Beasley, 77 So.3d 751, 754 (Fla. 4th DCA 2011) (citing section 61.075(3) and stating that when a stipulation and agreement is not entered and filed the “trial court must formulate a complete equitable distribution” that complies with the statute).
While compliance with the written findings of fact requirements established in section 61.075(3) is not necessary when the parties have reached a valid agreement regarding equitable distribution, see Viera v. Viera, 698 So.2d 1308, 1308 (Fla. 5th DCA 1997) (stating that compliance with section 61.075(3) “is not necessary where there is an agreement executed by the parties”), these requirements must be met when there is no such agreement and a distribution scheme is ordered by the court.
We agree with appellant that the trial judge erred by accepting the oral MSA as valid and incorporating it into the final judgment, because it was not based upon either parties’ testimony or sworn statements. We therefore reverse and remand this matter to the trial court for further proceedings with specific instructions that, in the event the parties are unable to reach an agreement, the trial court include the findings of fact mandated by section 61.075(3) in any equitable distribution it may impose.

Reversed and Remanded.

GROSS and DAMOORGIAN, JJ., concur.